UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TRACI HADLEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-00568-JAW |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Commissioner of Social Security,* | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a kitchen helper or, in the alternative, performing other work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in making a mental residual functional capacity ("RFC") determination unsupported by any expert opinion of record, ignoring Global Assessment of Functioning scores, improperly rejecting the opinion of examining consultant William M. DiTullio, Ed.D., and failing to call a medical advisor to assist in inferring the onset date of her disability, pursuant to Social Security Ruling 83-20. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 4-17. Because the ALJ erred in assessing the plaintiff's mental RFC based on the raw medical evidence,

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 12, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

and her discussion does not make clear that the error was harmless, I recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2012, Finding 1, Record at 11; that, through her date last insured, she had severe impairments of bipolar disorder, reactive airways disease, and alcohol abuse, Finding 3, *id.*; that, through her date last insured, she had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she needed to avoid concentrated exposure to pulmonary irritants and extreme temperatures, she was limited in concentration, persistence, and pace with the ability to understand, remember, and carry out simple tasks, and she was further limited to object-oriented tasks with only occasional interaction with supervisors, co-workers, and the general public, Finding 5, *id.* at 14; that, through her date last insured, she was capable of performing past relevant work as a kitchen helper, Finding 6, *id.* at 21; that, in the alternative, through her date last insured, considering her age (46 years old, defined as a younger individual, on her date last insured), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id.* at 21-22; and that she, therefore, had not been disabled at any time from August 20, 2010, her alleged onset date of disability, through March 31, 2012, her date last insured, Finding 7, *id.* at 23. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 and, in the alternative, Step 5 of the sequential evaluation process. At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

At Step 5 of the sequential evaluation process, the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

**I. Discussion**

The plaintiff filed applications for both SSD, or Title II, benefits and Supplemental Security Income ("SSI"), or Title XVI, benefits on April 12, 2013, alleging that she had been disabled since August 20, 2010, by bipolar disorder and anxiety. *See* Record at 99, 121. "To be eligible to

receive SSD benefits [a claimant] ha[s] to have been disabled on or before [his or] her date last insured . . .; however, eligibility for SSI benefits is not dependent on insured status." *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999). Because the plaintiff's date last insured for SSD benefits was March 31, 2012, *see* Finding 1, Record at 11, she had to prove that she was disabled on or before that date to be entitled to SSD benefits.

The plaintiff was found entitled to SSI benefits effective April 12, 2013. *See id.* at 141-42. Accordingly, her appeal before the ALJ solely concerned her eligibility for SSD benefits. *See id.* at 9.

The record before the ALJ contained five opinions of four experts bearing on the plaintiff's mental impairments. These were, in reverse chronological order:

1. A July 20, 2010, medical source statement of ability to do work-related activities (mental) in which examining psychological consultant William DiTullio, Ed.D., assessed the plaintiff as markedly limited in, or effectively precluded by her symptoms from performing, 13 of 20 work-related tasks, accompanied by Dr. DiTullio's July 21, 2010, report of examination. *See id*. at 776-80.

2. A March 11, 2011, opinion of agency nonexamining consultant Brian Stahl, Ph.D., that the plaintiff's mental impairments were nonsevere. *See id*. at 88.

3. An August 2, 2013, opinion of agency examining consultant Donna M. Gates, Ph.D., that, based on the plaintiff's presenting problems at the time of examination, "it appeared that she would have a difficult time following work rules, relating well to others, and assuming a mild level of work-related stress while completing simple instructions independently[,]" "[s]he appeared to have inflexible problem-solving and coping skills[,]" and "[s]he likely would have a

4

difficult time behaving in an emotional[ly] stable manner given her depression, hypomanic features, and anxiety." *Id*. at 583.

4. An August 19, 2013, opinion of Dr. Stahl that there was insufficient evidence to assess the severity of the plaintiff's mental impairments prior to her date last insured, but that her impairments currently met the criteria of Listing 12.04 (affective disorders), Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), with moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. *See id*. at 104-05.

5. A February 4, 2014, opinion of agency nonexamining consultant David R. Houston, Ph.D., that the plaintiff's mental impairments met the criteria of Listing 12.04 with an "EOD," or established onset date, of March 1, 2013, and that notes from KBH (Kennebec Behavioral Health) prior to her date last insured of March 31, 2012, "consistently indicate[d] a non-severe mental impairment[,]" with no MER (medical evidence of record) from June 22, 2012, to May 31, 2013. *Id*. at 126.

While the DiTullio opinion predated the Stahl and Houston opinions, it was added to the record subsequent to their reviews. *See* Statement of Errors at 6 n.1; Record at 89, 106, 127.

The ALJ gave the DiTullio opinion "little weight" on several bases, including that it was "conclusory and against the weight of the record as a whole." Record at 19-20. She accorded the opinions of Drs. Stahl and Houston "evidentiary weight to the extent that they are consistent with the [plaintiff's] residual functional capacity identified above." *Id*. at 20. She elaborated:

> The undersigned has considered all of the medical evidence of record and treatment notes received during the development of the record, in conjunction with the [plaintiff's] testimony and demeanor at the hearing, and concludes the [plaintiff's] impairments, considered singly and in combination, result in the [RFC] identified above. Although Drs. Stahl and Houston concluded that the [plaintiff's] mental impairments resulted in marked functional limitations in the areas of social

5

> functioning and maintaining concentration, persistence and pace, their conclusions were based on more recent evidence that post-dates the [plaintiff's] date last insured. So, too, Dr. Gates' assessment . . . also reflects the severity of the [plaintiff's] mental health difficulties *after* her date last insured of March 31, 2012. In fact, Dr. Stahl reviewed the record twice – once on March 11, 2011, wherein he concluded that the [plaintiff's] mental impairments were non-severe, and again on August 19, 2013, wherein he concluded that the most recent evidence of record, *all of which post-dated the* [*plaintiff's*] *date last insured*[,] now reveals that she has severe mental impairments resulting in marked functional limitations. This is true also of the consultative psychological evaluation [by Dr. Gates] included in the record. . . . While the undersigned accepts that the [plaintiff] had mental impairments that were severe prior to her date last insured, the evidence does not support a finding that they resulted in limitations that were severe enough to disable her, either when considered alone, or in combination with her other severe impairments (asthma and alcohol abuse).

*Id*. at 20-21 (citations omitted) (emphasis in original).

The ALJ found that, prior to the plaintiff's date last insured, she had mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace, with no episodes of decompensation of extended duration. *See id*. at 12-13. She found the plaintiff's allegations "not entirely credible[,]" but added:

> That is not to say that [she] does not have any limitations that affect her ability to work. Those limitations that are supported by objective evidence of record have been incorporated into her [RFC] at finding #5, above. These limitations do not, however, preclude all substantial gainful activity.

*Id*. at 19.

The plaintiff argues, and the commissioner does not contest, that the ALJ, as a layperson, was unqualified to assess her mental RFC based on the raw medical evidence of record. *See* Statement of Errors at 6-7; Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 12) at 11-13; *see also, e.g., Gordils v. Sec'y of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record.").

The commissioner contends that the error is harmless because the ALJ's mental RFC finding is more favorable to the plaintiff than the evidence would otherwise support. *See* Opposition at 11-13 (citing *Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *4 (D. Me. June 25, 2015); *Wright v. Colvin*, No. 2:14-cv-75-JHR, 2015 WL 58458, at *4 (D. Me. Jan. 5, 2015); *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *2-4 (D. Me. Jan. 5, 2015); *Bowden v. Colvin*, No. 1:13-CV-201-GZS, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014); *Gould v. Astrue*, No. 2:11-cv-265-JAW, 2012 WL 1098471, at *4 (D. Me. Mar. 31, 2012) (rec. dec., *aff'd* Apr. 18, 2012)).

The plaintiff asserts that remand is warranted because the ALJ failed to explain how she derived her RFC from the evidence. *See* Statement of Errors at 7 (citing *Staples v. Colvin* ("*Donald Staples II*"), No. 2:15-cv-392-DBH, 2016 WL 4146083, at *5 (D. Me. Aug. 3, 2016) (rec. dec., *aff'd* Oct. 6, 2016); *Staples v. Astrue* ("*Donald Staples I*"), Civil No. 09-440-P-S, 2010 WL 2680527, at *6 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010)).

The commissioner does not contest that *Donald Staples I*, if controlling, is dispositive in the plaintiff's favor. *See* Opposition at 12-13. However, she argues that *Donald Staples I* is "in tension" with the more recent caselaw on which she relies, which she asserts "is more persuasive in light of the fact that the RFC determination is *not* a medical determination, 20 C.F.R. § 404.1527(d), (d)(2), but is 'based on all of the relevant medical *and other* evidence,' 20 C.F.R. § 404.1545(a)(3)." *Id*. at 12 (emphasis added by commissioner). She contends that *Donald Staples II* is distinguishable in that, there, "the ALJ apparently made a[] lay determination that was *not* more favorable to [the claimant] than was justified by the medical evidence." *Id*. at 13 (emphasis in original). She asserts that, "[e]ffectively, plaintiff's attack on the ALJ's analysis of the evidence amounts to no more than another attack on the well-established rule that an ALJ is permitted to

7

assess a *more* restrictive RFC than is suggested by the medical opinion evidence that the ALJ does not wholly reject." *Id*. at 13-14 (emphasis in original).

However, the plaintiff does not disagree with the proposition that remand is unwarranted when an ALJ reaches a finding more favorable to a claimant than the evidence would otherwise support. Rather, she argues that a reviewer cannot tell, from the explanation provided by the ALJ, whether that is the case here. *See* Statement of Errors at 7; *see also Donald Staples II*, 2016 WL 4146083, at *5 ("[W]hen a claimant raises the issue, the connection between a functional limitation included in an RFC and some particular evidence in the record must be apparent."); *Donald Staples I*, 2010 WL 2680527, at *6 (remand warranted when, rather than giving claimant the benefit of the doubt, ALJ affirmatively found a severe mental impairment, assigning agency nonexamining consultants' opinions weight only to extent they found a medically determinable mental impairment, as a result of which "she was obliged to make an RFC determination . . . rooted in substantial evidence of record").

At oral argument, counsel for the commissioner asserted that, having supportably rejected the DiTullio opinion, the ALJ merely reviewed the same evidence seen by Drs. Stahl and Houston to reach a more plaintiff-friendly conclusion. He pointed out that, in this case, unlike in *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017), the ALJ never indicated that the Stahl and Houston opinions had been superseded by new evidence. *Compare Lisa Staples*, 2017 WL 1011426, at *5 (ALJ's error in assessing mental RFC based on raw medical evidence not harmless when she stated that she gave little weight to agency nonexamining consultants' finding of a nonsevere mental impairment because evidence received at hearing level demonstrated that claimant's mental impairments were severe and resulted in moderate limitations). More generally, the commissioner asserted that "it

8

is permissible for an ALJ to arrive at an RFC determination that is *more* favorable to the claimant than the least-restrictive RFC opinion of record, so long as the ALJ does not state that that opinion is wholly lacking." Opposition at 13 (citing *Lisa Staples*, 2017 WL 1011426, at *5) (emphasis in original).

While, in this case, the ALJ did not say that new evidence demonstrated the existence of a severe mental impairment imposing moderate restrictions or that she rejected, or gave little weight to, the Houston and Stahl opinions, her discussion of the weight accorded them does not withstand scrutiny.

As the plaintiff's counsel contended at oral argument, the ALJ's assertion that she gave those opinions weight to the extent consistent with her assessed RFC is illogical. As a practical matter, this could only mean that she gave them no weight, because neither Dr. Stahl nor Dr. Houston assessed a mental RFC for any time period at issue. *See* Record at 87-88, 104-06, 125-27; 20 C.F.R. § 404.1520a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.").

Further, the ALJ unequivocally stated that the record reflected, and that she accepted, that the plaintiff's bipolar disorder was severe as of her date last insured, and that she had incorporated limitations *supported by the objective evidence of record* into her RFC assessment. *See* Record at 11, 19, 21.

The ALJ, thus, failed to make clear to a reviewing court how she weighed the Stahl and Houston opinions. One reasonable interpretation is that she wholly discounted them as against the weight of the objective, and other, evidence of record. If she did, her erroneous layperson's

assessment of the plaintiff's mental RFC was not more favorable to the plaintiff than the evidence would otherwise support.

"[R]eversal and remand are warranted when failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result *via* an acceptable analytical pathway." *Gerry v. Berryhill*, No. 1:16-cv-00351-DBH, 2017 WL 2894126, at *5 (D. Me. July 7, 2017) (rec. dec., *aff'd* July 25, 2017). That is the case here.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of October, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge